United States District Court
Southern District of Texas
**ENTERED**
January 26, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RAVON RHONE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-151 |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| MEDICAL BRANCH, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ravon Rhone ("Plaintiff") as next friend and the executor of the Estate of Robin Rhone, Deceased ("Rhone"), filed suit against the University of Texas Medical Branch ("UTMB"), alleging that UTMB violated Title VII and Texas law by its treatment of Robin Rhone from 2011 through May 2014. UTMB has filed a motion for summary judgment (Dkt. 33).

Rhone was an Administrative Secretary at the University of Texas Medical Branch from September 1996 until her death in May 2014. On April 1, 2011, Rhone was interviewed as part of an internal investigation into another employee's allegations against Dr. Garland Anderson, the Dean of the Medical School. Rhone later stated that she "provided truthful testimony confirming allegation[s] of discrimination" during this interview.

Plaintiff alleges that "shortly after" Rhone provided information, she became the target of "ongoing retaliation, including harassment and the creation of a hostile work environment" by at least three senior employees of UTMB—Cameron Slocum, Lori

Kocian, and Michelle Moreno. Plaintiff's complaint alleges several specific actions taken against Rhone: (1) on July 2011, Slocum "warned" Rhone "that he was going to be closely watching her and that he 'had his eyes on her.;" (2) Rhone's desk was moved to a location where she was "highly visible—and far more visible than any other Administrative Coordinator working in the Department;" (3) after Rhone complained in March 2012 to Slocum that "employees" were placed in a "dangerous, risky and unsafe work environment," Kocian "berated" Rhone; (4) after Rhone complained in "summer 2012" of retaliation resulting from her April 2011 statements, UTMB assigned her additional job duties that "effectively required to [her] to perform the job duties of three full-time employees;" (5) in early 2013, after Rhone approached Moreno about her workload, Moreno "began counseling [Rhone] for deficient performance and threatening her with termination;" (6) Moreno then assigned Rhone the additional of logging her time spent on tasks during the day; and (7) in June 2013, Moreno informed Rhone that she could be fired for errors in her work. In early September 2013, Rhone filed a charge of discrimination with the EEOC.

According to Plaintiff, the persistent threats to Rhone's job security, along with the pressure of her increased workload, caused Rhone to suffer extreme stress, emotional pain, mental anguish and caused her to seek medical treatment for elevated blood pressure, stress, and anxiety, ultimately causing Rhone's untimely death in May 2014. Plaintiff filed this lawsuit in June 2015.

## ANALYSIS

### A. Rule 56 Standards

Summary judgment is appropriate when the movant shows there are no genuine issues of material fact and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when the "evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014). "When assessing whether a dispute as to any material fact exists, we consider all the evidence in the record but refrain from making credibility determinations or weighing the evidence; instead, we draw all reasonable inferences in favor of the nonmoving party." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362 (5th Cir. 2013) (citation omitted).

All evidence and factual inferences are viewed "in the light most favorable to the [nonmovant] and all reasonable doubts about the facts are resolved in favor of the [nonmovant]." *Bryan v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir. 2004) (citation omitted). Though courts are to draw all reasonable inferences in favor of the nonmovant, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Instead, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that

evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

These last principles are significant in this particular case. After the lawsuit had been on file for over a year, and after the close of discovery, UTMB filed a comprehensive motion for summary judgment that challenged each element of Plaintiff's case. After receiving several extensions of time for her response, Plaintiff filed a 13-page response to UTMB's motion that, for the most part, did little more than parrot her Complaint and generally cite to large swaths of an 800-page appendix. The Court declines to sift through the voluminous pages of evidence to find a fact issue. Where Plaintiff has provided a page citation, the Court has attempted to locate that page in her appendix and to include that evidence in the following analysis.

### B. Retaliation Under Title VII

To establish a prima facie case that an employer has acted in retaliation based upon protected activity, a plaintiff must show that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Hernandez v. Metro. Transit Auth. of Harris County*, No. 16-20135, 2016 WL 7404749, at *4 (5th Cir. Dec. 21, 2016) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).

To the extent that Plaintiff's claims can be viewed as also alleging a hostile work environment due to retaliation rather than discrete retaliatory adverse actions, the inquiry is very similar. *See, e.g., Rowe v. Jewell*, 88 F. Supp. 3d 647, 673 (E.D. La. 2015)

("[T]his court will assume, as other district courts in this circuit have done, that Rowe has a cause of action for a retaliatory hostile work environment. The court will apply a modified form of the discriminatory hostile environment standard to this claim."). Further, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test[.]" *Id*. (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). "This heightened standard 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id*. As with traditional discrimination claims, courts employ the *McDonnell Douglas* burden-shifting framework to analyze Title VII retaliation claims— "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. Louisiana Dep't of Transp. & Dev*., 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citations omitted).

### 1.   Did Plaintiff Establish a Prima Facie Case of "Protected Activity"?

Under Title VII's anti-retaliation provision, "protected activity" can consist of either: (1) "oppos[ing] any practice made an unlawful employment practice by this subchapter" or (2) "ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The first of these is known as the "opposition clause;" the second as the "participation clause." *EEOC v. Rite Way Serv., Inc*., 819 F.3d 235, 239 (5th Cir. 2016).

To proceed under the opposition clause, a plaintiff must "'show that she had a reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007); s*ee also Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981). The participation clause does not apply to a purely internal investigation—as the Fifth Circuit recently noted, "[e]very Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause." *Rite Way Serv.,* 819 F.3d at 240.

UTMB contends that it is entitled to summary judgment because there is no evidence to create a genuine dispute of material fact as to whether Rhone engaged in protected activity under Title VII. Plaintiff responds that Rhone's 2011 participation in the internal investigation of the allegations against Dr. Anderson, as well as her complaints about retaliation due to her participation in that 2011 investigation, were protected activities under the opposition clause. The Court finds that Rhone's statements in her EEOC complaint are some evidence that her 2011 participation was protected activity under Title VII. Accordingly, the Court declines to grant summary judgment for UTMB on this point.

### 2. Did Plaintiff Establish a Prima Facie Case of "Adverse Employment Action" or a "Hostile Work Environment"?

In order to constitute an adverse employment action for the purposes of a prima facie case of retaliation, there must be a "materially adverse" action that is "harmful to

the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)); *see also Brown v. Liberty Mut. Group, Inco.*, 616 Fed. App'x 654, 658 (5th Cir. 2015) (acknowledging "[r]etaliation claims may be proven by a wider range of adverse actions than discrimination claims.")

This requirement of materiality is intended to "separate significant from trivial harms." *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (quoting *White*, 548 U.S. at 68, 126 S.Ct. 2405). To determine whether an action is materially adverse, courts look to indicia such as whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among ... co-workers." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). Mere work-related reprimands are generally insufficient to rise to the level of being "materially adverse." *See Mendoza v. Bell Helicopter*, 548 Fed. App'x 127, 130 (5th Cir. 2013) (per curiam) (holding that employee did not suffer an adverse employment action where he was verbally counseled at least three times for taking too long on assignments and once for riding an electric buggy at work); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (same where employee was, among other things, chastised by superiors for performance issues). A reassignment that requires additional tasks is not materially adverse if it is not accompanied by any other change in the employee's status. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999). And a merely "[u]ndesirable

work assignment" does not result in material adversity to the assigned employee. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997).

Similarly, a "hostile work environment" results from discrimination that does not culminate in a tangible or adverse employment action. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In determining whether conduct constitutes a hostile work environment, courts must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's job performance. *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 651 (5th Cir. 2012). Such harassment must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co*., 170 F.3d 505, 509 (5th Cir. 1999). The conduct "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998).

A poor performance evaluation does not give rise to a hostile work environment. *Kang v. Bd. of Supervisors of La. State Univ.*, 75 Fed. App'x 974, 977 (5th Cir. 2003) (professor given negative performance review, written-up, received a low pay raise, was not nominated for a teaching award, and was criticized at a faculty meeting in front of his peers); *see also Brown v. Liberty Mut. Group, Inco*., 616 Fed. App'x 654, 657 (5th Cir. 2015) (pregnant employee's allegations that she was "harassed" by comments about her sales numbers, threats of penalties if [she] did not meet her sales goals, and the meetings with supervisors are "[t]he types of job-related criticisms . . . unlikely to support a hostile

work environment claim."). Nor do threats of termination, unfavorable scheduling, or unrealistic performance expectations—without more—establish a hostile work environment in this context. *See, e.g., Harris-Childs v. Medco Health Sols., Inc.*, 169 Fed. App'x. 913, 917 (5th Cir. 2006).

UTMB contends that it is entitled to summary judgment because there is no genuine dispute of material fact as to whether Rhone suffered an adverse employment action and—assuming that a retaliatory hostile work environment is actionable under Title VII—there is no genuine dispute of material fact as to whether Rhone suffered such a hostile work environment. The Court agrees. The complaints that Plaintiffs lists in her Response (additional duties, threats of termination, poor performance reviews, moving her desk, additional meetings and interventions, failing to respond to concerns of overwork) are not enough, without more, to establish a claim under Title VII.  UTMB is entitled to summary judgment in its favor on this point.

### 3.  Did UTMB establish legitimate, nonretaliatory reasons for its decisions?

If the plaintiff succeeds in establishing a prima facie case of Title VII retaliation, the burden shifts to UTMB to state a legitimate, nonretaliatory reason for its decision. *Devere v. Forfeiture Support Associates*, LLC, 613 Fed. App'x. 297, 300 (5th Cir. 2015).

UTMB contends that it is entitled to summary judgment because there is no genuine dispute of material fact as to whether it has established legitimate, nonretaliatory reasons for the decisions of which Plaintiff now complains. The Court agrees. UTMB has brought forth evidence showing that Rhone's performance was repeatedly deficient and required intervention from her supervisors. Even Plaintiff's own evidence shows that

Rhone failed on numerous occasions to perform basic scheduling and administrative tasks, and she admitted at least twice that she had "dropped the ball" in this regard.

> ### 4. Plaintiff has the burden to raise a genuine issue of material fact that UTMB's proffered reason is a mere pretext for retaliation.

In order to survive UTMB's motion for summary judgment, Plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by UTMB. *McCoy*, 492 F.3d at 557. She can show pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). For example, a plaintiff could show that she is clearly better qualified than the person who got the job, promotion, raise, etc., or demonstrate that the employer's articulated reason is false by showing inconsistency in the employer's explanations at different times. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002)("a factfinder may infer the ultimate fact of retaliation by the falsity of the explanation"). The Fifth Circuit recently re-affirmed that this part of the analysis requires a plaintiff to bring forth more than a "subjective belief of retaliation, which we have repeatedly held is insufficient to warrant relief." *Hernandez*, 2016 WL 7404749 at *5 (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008). Even viewing all evidence and factual inferences in Plaintiff's favor, and resolving all reasonable doubts about the facts in her favor, the Court finds that Plaintiff has wholly failed to bring forth any evidence on this point. *See, e.g.,* Bryan *v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir. 2004)

(citation omitted). Accordingly, summary judgment is proper for UTMB on this point as well.

### CONCLUSION

Based on the foregoing analysis, for each of the reasons stated above, the Court finds that UTMB is entitled to summary judgment in its favor because there is no genuine dispute of material fact as to Plaintiff's claims in this case.  UTMB's motion is, therefore, **GRANTED**.

SIGNED at Galveston, Texas, this 26th day of January, 2017.

_George C. Hanks Jr_

George C. Hanks Jr.
United States District Judge